RECEIVED

JAN 2 0 2012

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANDIRA AMIN, MAGED SOLIMAN, and
MARK BOCHRA

                *Plaintiffs*,

  *v.*

5757 NORTH SHERIDAN RD
CONDO ASSOCIATION, an Illinois
not-for-profit corporation, and RONALD
MENDELBLAT,

              *Defendants.*

CIVIL ACTION

1:12-cv-00446
Judge Joan H. Lefkow
Magistrate Judge Jeffrey Cole

**MAGISTRATE JUDGE** _____

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE COURT:**

    NOW COMES, PLAINTIFFS, ANDIRA AMIN, MAGED SOLIMAN, and MARK

BOCHRA ("Plaintiffs"), *Pro Se* and respectfully file this Original Complaint, hereby brings this

Civil action against ("Defendants") 5757 North Sheridan Road Condo Association; an Illinois

not-for-profit corporation, and Ronald Mendelblat, and would show the Court as follows:

### I. PARTIES

    **1.**    Plaintiffs, Andira Amin and Maged Soliman are Egyptian, Christian Coptic

Orthodox condominium owners in joint tenancy and resides at 5757 North Sheridan Road

unit13B, Chicago, Illinois 60660. (Sometimes referred to herein as the "Subjective Property").

    **2.**    Plaintiff, Mark Bochra, is an Egyptian American, male citizen of the United States

who resides at 5757 North Sheridan Road unit 13B, Chicago, Illinois 60660. Plaintiff Mark

**PLAINTIFFS' ORIGINAL COMPLAINT**                            1

Bochra is the son of the Plaintiffs Andira Amin and Maged Soliman, and the brother of Steve Bochra.

    **3.**    Defendant, 5757 North Sheridan Road Condo Association is a not-for-profit corporation of Illinois and a Condominium Association located at 5757 North Sheridan Road Chicago, Illinois 60660.

    **4.**    Defendant, Ronald Mendelblat at all times relevant hereto resided at 5757 North Sheridan Road unit 13J and is made a party to this action for his individual acts. Commencing on or about January of 2008 up until March 8th, 2011 continues to be the President of 5757 North Sheridan Road  Board of Directors and acted for and on behalf of the Association.

## II. JURISDICTION AND VENUE

    **5.**    This action arises under 42 U.S.C. §1982, 42 U.S.C. §3601 et esq.; and the Illinois Property Condominium Act 765 ILCS 605/18.4.

    **6.**    Jurisdiction is conferred on this Court by 28 U.S.C. §1331, §1343(a), and §2201, and the Federal Fair Housing Act, 42 U.S.C. §3613(a).

    **7.**    Venue for all causes of action stated herein is proper in the Northern District of Illinois, Eastern Division in that the events giving rise to the claim occurred in the Northern District of Illinois and Defendants directed acts to Plaintiffs in the Northern District of Illinois; both Plaintiffs and Defendants reside within the boundaries thereof.

## III. STATEMENT OF FACTS

    **8.**    Defendant, 5757 North Sheridan Road Condo Association ("NSRCA") is a Condominium Association, not for profit corporation, governed by and subject to the Illinois condominium Property Act, the Condominium Association's Declaration and Bylaws, and the Rules, Regulations, and policies of the Condominium Association.

**PLAINTIFFS' ORIGINAL COMPLAINT**         2

**9.** Defendant, 5757 North Sheridan Road Condo Association is granted the authority to administer the property (a 20-story, 171 unit high-rise building) by the Declaration of Condominium Ownership for the Association (hereinafter the "Declaration"), recorded with the office of the Recorder of Deeds of Cook County, Illinois, and the Illinois Condominium Property Act (hereinafter the "Act").

**10.** The Building Group, Inc. is the management agent for 5757 North Sheridan Road Condominiums wherein, Frank Haxhaj at all times relevant hereto was the property manager at 5757 North Sheridan Road. Commencing on or about January of 2008 up until August 14th, 2011 Frank Haxhaj continued to be the property manager for the subjected property and acted for and in conjunction with the Association.

**11.** Commencing on or about January of 2008 and continue to date hereof, Defendants 5757 North Sheridan Condo Association and Ronald Mendelblat, discriminated, harassed, intimidated, threatened, and interfered with the Plaintiffs' by constantly harassing them during Copts religious holidays, stating Saint Abanoub (a 12 years old Coptic Martyr holding the cross tapped on the exterior of the Subjected Property doorway) "a safety hazard and nuisance" and needed to be removed, and interfering with Plaintiffs' full use and enjoyment of the subjected property based on Plaintiffs status as a member of the Copts religion and because of race .

**12.** Plaintiffs, Andira Amin, and Maged Soliman, are both owners of condominium unit (13B), located at 5757 N. Sheridan Road, Chicago, Illinois 60660. Plaintiffs purchased the condominium unit on or about November 8, 2006. Plaintiffs are Christian Coptic Orthodox-Egyptians unit owners. About a month after the Plaintiffs moved into unit 13B, Todd Murray, the owner of unit 12B accused the Plaintiffs of having a water leak which caused water to leak into

**PLAINTIFFS' ORIGINAL COMPLAINT** 3

his condominium unit. As a result of this allegation, George Perez the building's generator, at management's request, started making numerous visits to the Plaintiffs' unit to check for leaks. George Perez continued to visit Plaintiffs' unit even after he did not find any evidence of leak. He would enter the unit at very early hours in the morning without proper motive.

13.     On or about February 4, 2008, the Plaintiffs hired a licensed plumber from *Roto-Rooter Plumbing, Inc.* to inspect their bathrooms for leaks, in order to put an end to the constant interferences and visits from George Perez and Frank Haxhaj, the property manager. The plumber did not find any leak in any of the bathrooms in the unit. Following the inspection, Frank Haxhaj told the Plaintiffs that they were "fine now" and would inform Todd Murray that the leak was not coming from the Plaintiffs' unit.

14.     Following the inspection, Frank Haxhaj invited the Plaintiffs to a board meeting, which was held around mid February of 2008. Frank Haxhaj and seven board members[1] attended the meeting along with the Plaintiffs wherein, the Board of directors asked Frank Haxhaj about the plumber from Roto-Rooter to which Haxhaj commented that the plumber was drunk after watching the football game the night before and thus his inspection was not proper. The Board of directors consequently began to laugh. When the Plaintiffs tried to respond, they were told to "Shut up." The Board insisted they were going to have another plumber to inspect Plaintiffs' unit and that finding would be conclusive. Plaintiffs agreed to have the inspection done.

15.     On May 27, 2008, Michael Monk[2], who was introduced as a licensed plumber from *Fettes, Love & Sieben*, inspected the bathrooms in the Plaintiffs' unit. Present were the Board President, Ronald Mendelblate, Frank Haxhaj, and the Plaintiffs Maged Soliman and Andira

---

[1] Ronald Mendelblat, William Ryerson, Carol Anderson, Randall Musgrave, Time Serges, Tim Sandvoss, & Arthur Dizon.

[2] Michael Monk who was introduced as a license plumber, wherein the Association claimed to IDHR and the Circuit Court that he is a license plumber, was later found to be a contractor.

Amin. Michael Monk was in the unit for a long period of time, when Ms. Amin asked how much longer it would take, because she did not see any leak, Michael Monk took some water from the sink and spilled it on the floor. Both the Board President and Frank Haxhaj told Ms. Amin to be quite. After the inspection, they told Ms. Amin that she needed to make a major repair to her bathrooms, but there was no mention of any leak as none was found.

16.     On or about July 15, 2008, Dennis Pienias, an inspector from the City of Chicago came to inspect units 12B and 13B wherein, he inspected the Plaintiffs' unit. Once again, no leaks were discovered. Upon request to inspect unit 12B, Frank Haxhaj belligerently slammed his office door in front of Dennis Pienias' face, denying a city inspector access to unit 12B. On August 6, 2008, the City of Chicago filed a suit against 5757 North Sheridan Road Condo Association for twelve code violation.

17.     5757 North Sheridan Road Condo Association, (as defendant in the lawsuit), joined Mr. Soliman and Ms. Amin as a co-defendants to the lawsuit.[3] Defendant, 5757 North Sheridan Road Condo Association was dismissed from the lawsuit because city failed to establish a prima facie case, the Plaintiffs remained in the case *Pro Se*. The City of Chicago Judge ordered an inspection of the Plaintiffs' condominium by a City of Chicago licensed plumber, John J. Praznowski wherein, the inspection report stated the following "After 45 minutes test, no sign of leaking in master bath or guest bathroom"(*Sic*). As a result, Plaintiffs were dismissed from the City suit without being held liable for any violation fees or fines.

18.     The City of Chicago further ordered 5757 North Sheridan Road Condo Association that the ceiling in unit 12B be resealed. Prior to the ceiling in unit 12B being resealed, Todd Murray, on numerous occasions, would intentionally leave his bathroom's light turned on all nigh

---

[3] A letters between attorney **Bruce A. Dickman** and **Frank Haxhaj,** stating in part "I met with the City attorneys before this matter was called and convinced them to bring in the owner's of 13B as additional defendants" , the letter is attached hereto as Exhibit "1"

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                        5

which would reflected into Plaintiffs' bedroom, and on one occasions shouted from his unit

below, stating in part that he will call the Interpol to kick the Plaintiffs out of the country.

Plaintiffs complained to the Association wherein, the complaint was completely disregarded by

Frank Haxhaj and the Association.

**19.**     On October 5, 2008, Ms. Amin and her son Steve Bochra[4], were verbally assaulted

by an employee at the building's parking garage; Kossi Tetedje, causing severe fear and anxiety

to Steve Bochra. The employee threatened Steve Bochra, who telephoned the Chicago police and

filed a police report at the scene. The police report labeled the incident as "simple assault." When

the plaintiffs reported the incident to Frank Haxhaj, he responded by saying the employee was

protected by the union and in order to take any necessary action, the employee had to commit

multiple violations.

**20.**     On or about February 26, 2009, Plaintiffs received their "assessment statement of

account" and found a number of arbitrary legal fees and fines charged to their account by Frank

Haxhaj and the Association. Plaintiffs sent various letters to the board of directors disputing the

fees wherein, Frank Haxhaj sent the Plaintiffs a letter inviting them to attend a board meeting on

April 23, 2009 to discuss the matter. Despite the fact that the Plaintiffs were found by the City of

Chicago not liable, Defendants has continued to harass the Plaintiffs for attorneys fees regarding

the alleged leak in the unit, and other imposed arbitrary fines.

**21.**     Commencing on or about March of 2009 and continue to date hereof, Defendant

Association continued to intimidate, threaten, and interfere with Plaintiffs and their children's

right by failing to provide fair and equal treatment to them, this include but not limiting to,

---

[4] Steve Bochra, a graduate student from UIC http://www.uic.edu/ with a political science degree. Deacon at Saint
Mark Coptic Church. Use to work at URS Corporation http://www.urscorp.com/ as an assistance manager since
graduating from high school. Due to severe emotional abuse by the Association, its representative, and those in
active concern with them by creating a hostile environment; Steve suffered severe emotional damages and
irreparable harms.

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                                    6

failure to respond and address Plaintiffs Amin and Soliman's concern(s); failure to show respect and provide fair and equal treatment toward the Plaintiffs and their children; failure to allow Plaintiffs Amin and Soliman to inspect the Associations' record related to the alleged legal fees and arbitrary fines in violation of Chicago Municipal Code 13-72-080 (2009), and the Illinois Condominium Property Act (765 ILCS 605/19); and failure to cease discrimination, harassments and intimidation during Copts religious holidays.

22.     Early in April of 2009, Plaintiffs invited the Board President, Ronald Mendelblate to dinner to discuss the ongoing unfair treatments by the Association, and the various legal fees and fines imposed on Plaintiffs' assessment account. During the dinner, Ronald Mendelblate, mentioned that many of the Board of directors do not like "Arabs" because they previously had an Arab resident who would get loud at board meetings, which gave the impression that all Arabs were vulgar.

23.     On April 23, 2009, Plaintiffs attended an executive board meeting demanded by the Association to dispute the legal fees pertaining to the City of Chicago suit and other arbitrary alleged claims wherein, Defendants failed to address Plaintiffs' concerns by issuing its findings in writing pertaining to the disputed legal fees and other arbitrary fines, unwilling to provide the Plaintiffs with a direct answer, further intentionally intimidating and harassing Plaintiffs and their family during their religious holidays. On April 24, 2009 was *Good Friday* for all Copts wherein, Plaintiffs fast without drinking or eating, and pray at Saint Mark Coptic Orthodox church[5] from 9:00 am till 6:00 pm. April 25, 2009 was Easter holiday for all the Copts.

24.     Plaintiffs, Andira Amin and Maged Soliman attended various board meetings to have the issue resolved, in one such meeting on September 24, 2009, Plaintiff, Andira Amin lost consciousness and had to be transported to the hospital as a result of many verbal and emotional

---

[5] Saint Mark Coptic Orthodox Church http://www.stmarkchicago.org/

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                                 7

abuses by the Board of directors, attorney Peter Segal, and Todd Murray; specifically, Ronald

Mendelblate, Randy Musgrave, Carol Anderson, and Arthur Dizon. While Ms. Amin was

undergoing this emotional attack, some of the named individuals were laughing when Ms. Amin

was lost conscious on the floor. Individuals who were present during September 24, 2009

executive board meeting without Plaintiffs' prior awareness were: *Frank Haxhaj*, all *7 Board*

*members*, *Todd Murray*, attorney *Peter Segal*, and The Building Group, Inc. president *Jim*

*Stoller.* As a result, Plaintiff Andira Amin spent the night at the hospital. The doctor advised

Andira Amin not to expose herself to any further stress or emotional abuse because it would

endanger her health. Shortly thereafter, on October 12, 2009, Frank Haxhaj sent the Plaintiffs a

new letter to appear for another meeting to discuss the same matter; the legal fees pertaining to

City of Chicago lawsuit.

    **25.**   On December 23, 2009, The Association in conjunction with Frank Haxhaj,

harassed the Plaintiffs on Christmas-eve wherein, Frank Haxhaj after work hours, furtively

dropped a letter under Plaintiffs' unit on December 24, 2009 imposing arbitrary fines for the

amount of $300 based on noise complaint.

    **26.**   On February 2, 2010. Plaintiffs received a notice of violation from Frank Haxhaj,

and approved by the Association, stating that a complaint has been filed with the Management

office against the Plaintiffs. The letter stated in part that Plaintiffs have an object hanging on

their door which is "nuisance to your fellow neighbors and a safety hazard" and needed to be

"removed" or face the consequences of getting fined.[6] Plaintiffs allege that the only object

hanging on their door since 2008 is a small picture of a Coptic Saint; Saint Abanoub[7] (a 12 years

---

[6] A true and correct copy of the letter signed by Frank Haxhaj is attached hereto as Exhibit "2"

[7] A true and correct copy of Saint Abanoub picture tapped on unit 13B doorpost is attached hereto as Exhibit "3"

**PLAINTIFFS' ORIGINAL COMPLAINT**                                     8

old martyr holding the cross).[8] Upon the information and belief, and based on further investigation, Plaintiffs' allege that Ronald Mendelblat, the non Egyptian, non Christian Coptic Orthodox, was the complainant.[9]

27.     Defendant, Association demanding the removal of Plaintiffs' religious icon from their door and threatening the Plaintiffs with fines was in violation of Chicago Municipal Code § 5-8-020, 5-8-030 (H) and 765 ILCS 605/18.4(h).[10]

28.     As a result of ongoing discrimination, harassments during religious holidays, bigotry, and unfair treatments, Plaintiff filed a discrimination complaint based on national origin against 5757 North Sheridan Road Condo Association, and The Building Group, Inc. on January 20, 2010 with U.S Department of Housing and Urban Development "HUD" which was referred to the Illinois Department of Human Rights "IDHR" wherein, the charge was Unperfected. Later the charge was revised and Perfected on February 3, 2010 wherein, the discrimination was based on national origin and religion. Later, the charge was revised again on October 7, 2010.[11]

29.     Upon the information and belief, and as a result of Plaintiffs' filed discrimination complaint with IDHR, the Defendants became even more hostile towards the Plaintiffs and their family and has increased its efforts to evict the Plaintiffs from the premises.

30.     On February 12, 2010, Plaintiffs received a letter from Frank Haxhaj and approved by the Association stating in part that if the Plaintiffs do not pay the balance of $5,097.30 within 7 days from the date of the letter, Plaintiffs' parking privilege will be terminated.

---

[8] Reference- story of Saint Abanoub http://stmarkboston.org/resources/the-saints/111-st-abanoub

[9] Fair Housing Act (FHA) protects persons from discrimination not only before, but also *after* housing has been acquired; The United States Department of Justice Civil Rights Division emphasis. http://www.justice.gov/crt/spec_topics/religiousdiscrimination/newsletter/focus_38.htm

[10] A true and correct copy of the letter signed by Frank Haxhaj is attached hereto as Exhibit "2"
[11] A true and correct copy of 10/7/2010 charge filed with IDHR is attached hereto as Exhibit "4" (PLA 004-007).

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                    9

31.     On or about April 8, 2010, 5757 North Sheridan Road Condo Association, filed a lawsuit against Plaintiffs, Andira Amin and Maged Soliman in the Cook County Circuit Court (case # 2010-CH-15025) based on trumped up allegation; alleging for leaks and damages to the common element of the building, based on an alleged stain which occurred on the carpet of the 13th floor hallway wherein, a Temporary Restraining Order (TRO) was requested to gain access to unit 13B.[12]

32.     On April 26, 2010; Judge Kathleen Pantel granted Condo Association the TRO (giving the association unlimited access to Plaintiffs' unit wherein, further abuse and intimidation occurred by Frank Haxhaj) to assert the source of the leak. The TRO against the Plaintiffs was granted on April 26, 2010 and lasted until October 1, 2010. Following the TRO, the Associations have made two extensive inspections pertaining to unit 13B and 12B wherein, no damage to the common element of the building or leaks were seen or found as alleged by the Defendants. In retaliation, the Defendants levied the costs of the inspections against Plaintiffs' account.

33.     Defendant, Associations through Haxhaj has billed the Plaintiffs' assessment account for numerous alleged noise violation based on trumped up allegation(s). Defendants levied fines for noise complaints filed by unit 12B, Todd Murray, against the Plaintiffs for every single month from January to September of 2010, the fine for each month were $300.[13] Defendant, Association in conjunction with Haxhaj distributed to each unit owner, a copy of the minutes from the board of directors meeting, to which was attached a copy of the document regarding the imposition of these fines against the Plaintiffs, thus depicting the Plaintiffs and their children in a negative light to their neighbors. Plaintiffs continuously acting with good faith,

---

[12] A copy of the Association's lawsuit against unit 13B is attached hereto as Exhibit "5" (PLA 008-016).

[13] The sort of noise complaints which was alleged by Todd Murray, are dragging noises and hearing Plaintiffs' and their family's footsteps for approximately 4-5 minutes.

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                        10

requested for a settlement meeting and mediation through investigator David D'Hansel wherein, both resolutions were denied by the Associations without providing a comprehensible reason.

34.  As a result of Defendants' wrongdoing by depicting the Plaintiffs and their children in a negative light to their neighbors, Plaintiffs found various other residence questioning the Plaintiffs and their children in the elevator of the building, asking them whether they hold parties which causes noises because the board of directors are constantly bring "your names" during regular board meetings and speaking belligerently about you wherein, Plaintiffs commented back that they don't hold any parties, and they are all a busy family and that god is there and know the truth. Plaintiffs allege that they found these questions humiliating, intrusive, prejudicing, and have placed them in false light more than once.

35.  Plaintiffs allege that the Defendants in conjunction with Frank Haxhaj, more than once attempted to create claim(s) based on trumped up allegation(s) to serve as a purpose to constructively evict the Plaintiffs from the premises, further placing the Plaintiffs and their children in false light, resulting in continuous suffering, anxiety, emotional distress and mental anguish by creating a hostile environment for the Plaintiffs and their children.

36.  On or about June 15, 2010, Todd Murray placed an Egyptian tomb with a hunting cap on the tomb, close to his window, so that the Plaintiffs would be able to see it. He removed the tomb the next day.[14] Plaintiffs allege that the Egyptian tomb was a reference to a threat.

37.  On June 23, 2010, Plaintiffs have been aware of the Defendants' true intentions to retaliate, as a result of Plaintiffs' filed complaint with IDHR. Through a conversation between attorney Tom Mathai and Defendant Association's counsel Peter Segal, Plaintiff became aware of the Association and Association's counsel Peter Segal true retaliatory plan i.e. force sale.[15]

---

[14] A true and correct copy of the Egyptian Tomb is attached hereto as Exhibit "6" (PLA 017).
[15] A true and correct copy of the e-mail sent to David D'Hansel is attached hereto as Exhibit "7" (PLA 018-019).

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                                11

**38.** Further collective evidence showed that it is the Association common practice to deceive justice to overshadows the truth. An e-mail conversation between one of the board of directors, Tim Serges, and other board of directors, including the Building Group Inc, Frank Haxhaj, and attorney Peter Segal attached on the same e-mail.[16] Tim Serges stated in part

"I do agree that the board needs a Peter Segal or David Sugar to win when they are going after silly cases like the guest parking and need to hide that they never gave the license plates to the unit owner so he could verify the tickets. When you need to deceive to win, then we need the high price costs of top lawyers." (*Sic*)

**39.** Further discovered e-mail conversation between Frank Haxhaj and Todd Murray showed Defendants and their agent's plan to discriminate; Haxhaj stated in part[17]

"Hi Todd...for your information only, we have a meeting next week Thursday with our legal attorney to finally put a plan in place of delivering an earthquake like effect to unit owner 13B. Mark my words, they will sell and move out sooner than you think."

**40.** On March 18, 2010, Plaintiff Andira Amin mailed a cease and desist letter to Defendant Association and its property manager Frank Haxhaj.

**41.** On Friday July 9, 2010, approximately around 6:00 pm and after work hours, Frank Haxhaj acting on behalf of the Association, came to Plaintiffs' unit by harassing, committing an assault, and a battery to Plaintiff Maged Soliman by intentionally scratching his arm in front of his two children, causing excessive fear, anxiety, and demoralized both Plaintiffs' children Mark Bochra and Steve Bochra because the attack on Maged Soliman, the father, was an attack on the children as well. A police report labeled the incident as "battery simple." The police report was handled by representative Rose Perez from Office of the States Attorney, wherein a police

---

[16] A true and correct copy of the e-mail is attached hereto as Exhibit "8" (PLA 020).
[17] A copy of an e-mail sent from Frank Haxhaj to Todd Murray is attached hereto as Exhibit "9" (PLA 021).

**PLAINTIFFS' ORIGINAL COMPLAINT**

investigator was assigned to the case and have issued a verbal warning to Frank Haxhaj baring him from visiting the 13th floor or he will lock him up.

42. In Retaliation of July 9, 2010 incident, willfully, and negligently, Defendants, Association and Ronald Mendelblat in conjunction with Frank Haxhaj acting with "actual malice", imposed $500 fines on Plaintiffs' assessment account, falsely alleging that Mark Bochra assaulted and battered the property manager on July 9, 2011 and this conduct is in violation of the Association's said by-laws. Thus, placing Mark Bochra before the public in a false light in a manner that was "highly offensive to a reasonable person" by imputing a criminal offense he never committed, causing irreparable harm to Mark's internal mental tranquility and reputation.

43. Plaintiff Mark Bochra, a graduate student from University Of Illinois at Chicago ("UIC"), with a biology degree; Mark has demonstrated an exemplary history in helping the community throughout high school and college. Some of Mark's achievements are included, but not limited to, a Presidential award for educational Excellence presented to Mark M. Bochra in recognition of outstanding Academic Excellence, signed by President George W. Bush and the U.S Secretary of Education Rod Paige; a Junior Citizen award of recognition to Mark M. Bochra for attaining the distinction of being selected an outstanding Junior citizen, awarded by the Chicago Park District for academic performance, moral characters, and service to the park and community; a certificate of recognition to Mark M. Bochra for recognize high scholastic achievement at University Of Illinois at Chicago, as well as being a member of National Honor Society. (10th on the list)[18]; and a proud blood donor at University of Illinois Medical Center; among several other community services and activities.

44. Plaintiffs allege that Defendant's counsel Peter Segal was aware of Mark Bochra's good reputation and the awards he received. On October 5, 2010, after the Court's status hearing

---

[18] http://www.uic.edu/honors/life/PhiEtaSigma/PhiEtaSigma-2006.shtml

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                          13

at Cook County Circuit Court, Plaintiffs' son Mark Bochra showed Peter Segal the original copies of the awards Mark received in the past.

**45.**     Commencing on or about January of 2008 and continue to date hereof, and upon the information and believe, 5757 North Sheridan Road building has undergone major repair projects concerning the building's main pipes to address major leaks in the building.

**46.**     On July 21, 2010; American Family Insurance; Plaintiffs Andira Amin and Maged Soliman's insurance retained a private attorney, Robert Hilbert from *HILBERT LAWLER & POWER LTD* to defend the Plaintiffs in the alleged lawsuit filed by the Association.

**47.**     On August 11, 2010, Defendant Association's counsel, Peter Segal, mailed the Plaintiffs a letter which contained a 10 days' notice of filing for force sale based on Article XI, section 11.02 of the Condominium By-laws. Plaintiffs allege that the Association and its counsel Peter Segal, failed to provide the Plaintiffs with a 10 day notice, resulting into breach of contract based on the Association's By-laws and its Declaration Article XI, section 11.02 of the Condominium's Declaration.

**48.**     On August 20, 2010, Defendant Condo Association, filed its First Amended Complaint, from one alleging leak emanating from the Plaintiffs' unit and requesting an injunction that would allow the Association unlimited access to the unit, to one alleging a wide variety of violations of the Association's by-laws and requesting a court-ordered sale of Plaintiffs' unit (effectively evicting the Plaintiffs from their condominium).[19]

**49.**     Plaintiffs allege, no mention was made in the Defendant, Association's First Amended Complaint of the alleged leaks from Unit 13B. Instead, there were a number of other violations that were alleged for the very first time. Plaintiffs allege that they have not been notified by the Defendants of these alleged violations before; nor had they been given an

---

[19] A copy of the Association's First Amended Complaint is attached hereto as Exhibit "10" (PLA 022-039).

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                                                  14

opportunity for a hearing to dispute them; nor these violations have any bases due to the fact that if these violations were true, they would reflect as imposed fines on the Plaintiffs' statement of accounts.

50. Plaintiffs allege that they affectively started receiving excessive fines after they filed their complaint for discrimination with IDHR. The primary relief sought by the Defendants is the involuntary sale of the Plaintiffs' unit. As a result of the Defendants' prayer for relief, Plaintiffs' insurance company withdrew from the lawsuit because the insurance policy only covered suits for damages and not eviction. Plaintiffs' insurance premium has increased as a result of the Defendants' action against the Plaintiffs.

51. Plaintiffs alleges that other unit owners have routinely been allowed to breach the Associations' by-laws, its rules and regulations and its declaration without consequence.[20] This includes, but not limited to, other unit owners having household pets in violation of said by-laws (i.e., Ronald Mendelblat, and other unit owners who have dogs); other residence causing excessive noise by yelling and cursing during late hours; other unit owner (i.e. Todd Murray) constantly yelling and belligerently speaking to the valet in the garage; Ronald Mendelblat continuous direct violation of the Associations' said by-laws and its declaration up to date by having birds inside his unit (noise and no pet rule violation) and by throwing his birds' waste in the recycle bin (chute room and safety hazard rule violation); and other unit owners placing boxes, mattresses, shoes, paintings, food hanged on the unit's doors, and other materials in the hallway in violation of the Associations' said by-laws.

52. Plaintiffs allege that the Defendants provided housing to Sergio Hernendaz; the valet of the building, across the hall from Plaintiffs' unit, wherein, on daily bases during early

---

[20] A true and correct copies of the violated sections of the Associations By-laws is attached hereto collectively as Exhibits "11" (PLA 040-044).

and late hours, Sergio Hernendaz, a renter and another unit owner who live in the building use to come to Sergio's unit, both shouting, cursing, fighting, and intentionally slamming their unit's door on delay basis during early and late hours. Sergio Hernendaz was provided housing specifically after Plaintiffs filed their claim for discrimination with IDHR. Plaintiffs allege the following act was purposely done to intimidate the Plaintiffs. Plaintiffs further allege, that the building is extremely old and the sound travel across the walls very easily.

**53.**     On or about September 13, 2010, attorney Christina Abraham from Council on American Islamic Relations - Chicago "CAIR-Chicago", following later attorney Lewis W. Powell III from The John Marshal Law School Fair Housing Legal Clinic "JMLS" represented the Plaintiffs, Andira Amin and Maged Soliman against the force sale.[21]

**54.**     As a result of defending against the forced sale, on November 5, 2010, investigator David D'Hansel send a letter to Christina Abraham stating in part that the Department of Human Rights will close Plaintiffs' filed charges with IDHR within 15 days if no objections were to be made, since the same issues were being litigated in the State Court. As a result, Plaintiffs' discriminatory complaints with IDHR were closed on December 16, 2010.[22]

**55.**     On January 3, 2011, Frank Haxhaj posted a notice to all unit owners stating that the water will be shut off from 9:00 am - 6:00 pm on January 6, 2011 wherein, this matter was not emergency. January 6, 2011 was Christmas-eve for Copts wherein, Plaintiffs celebrate their religious holiday by prepare food all day long and by 9:00 pm, Plaintiffs and Plaintiffs' children that day, go to the church to pray, and coming back at night around 1:00 am for the holiday's dinner. Defendants continuous actions intimidating, discriminating, and interfering with

---

[21] Defendants' counsel, Peter Segal following his First Amended Complaint moved the Court with a motion for Emergency Trial wherein, the Association's motion was denied and Plaintiffs proceeded with discovery.

[22] A copy of investigator David D'Hansel letter to Christina Abraham is attached hereto as Exhibit "12" (PLA 045).

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                            16

Plaintiff's enjoyment and celebrating their religious holiday because of their status as a member of the Copts religion and race.

56.   On June 17, 2011, Frank Haxhaj with the approval of the Association send the Plaintiffs a letter indicating that a complaint was filed by Todd Murray regarding a leak inside his unit, and requesting for an inspection. Plaintiffs contacted again their insurance and filed a new claim with their insurance wherein, the insurance send Robert Medina, an inspector from American Family Insurance who was present as a witness during the inspection dated June 27, 2011.

57.   On June 27, 2011, the Christopher Rehtorik, who was introduced as a licensed plumber from *Weinberg Plumbing Co., Inc.* inspected both unit 13B and 12B wherein, no leaks were again found. Based on collective information, and upon information and belief, it was discovered that Christopher Rehtorik is a contractor, not a licensed plumber. Following the inspection, Plaintiffs' insurance investigated the claim fully and denied the Association's claim for damages stating in part "no negligence on behalf of our insured."[23]

58.   On September 1, 2011, Peter Segal on behalf of Todd Murray send a letter to both CAIR-Chicago and JMLS and attaching *Christopher Rehtorik's* report; demanded that Plaintiffs need to remodel their whole bathrooms and asked for time.[24] Christopher Rehtorik's report was not only contradictory to Robert Medina's report but was based on sever speculations, and false statements; furthermore Christopher Rehtorik failed to hand sign his typed report, thus rendering it meritless.

---

[23] A true and correct copy of the letter mailed to the Association by Plaintiffs' insurance is attached hereto as Exhibit "13" (PLA 046).

[24] A true and correct copy of the letter mailed to both CAIR-Chicago and JMLS by the Association's counsel, Peter Segal, wherein Plaintiffs' counsel Rabya Khan and Lewis W. Powell III refused to respond back to the letter despite several requests made by Andira Amin and Mark Bochra for CAIR-Chicago and JMLS to legally respond back to the letter; the letter is attached hereto as Exhibit "14" (PLA 047-050).

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                                 17

59. Upon the information and belief, and investigation made by the Plaintiffs, Christopher Rehtorik was found pleaded guilty of conversation for forging his counsel's signature, his wife and her counsel signatures.[25] Plaintiffs further allege that Peter Segal has been legally representing Todd Murray in his personal property matter(s) without a signed retainer. Plaintiffs claim that the Association's counsel, Peter Segal had numerous long phone and e-mail conversations with Todd Murray pertaining to all his concerns and allegations wherein, the occurred legal fees and costs were levied against Plaintiffs' assessment account.[26]

60. Plaintiffs allege that the Association and their counsels have ultimately refused to cooperate with Plaintiffs' insurance by constantly breaching the Associations' Bylaws, its Declaration, and the Illinois Condominium Property Act.[27]

61. On July 28, 2011, Christina Abraham, e-mailed Plaintiffs' son Mark Bochra about her trip to Dubai for a year, commencing end of August of 2011, stating in part the following "I am leaving CAIR-Chicago for one year starting at the end of August. My replacement is going to be Rabya Khan, who will be continuing work on this case....I have no doubts about her qualifications or dedication to her profession, so I believe I am leaving my work in very good hands...You are all good people in my mind." Wherein, Rabya Khan took over Plaintiffs' case.

62. On August 14, 2011, a sudden letter posted by the Building Group, Inc. in 5757 North Sheridan Rd building lobby stating in part that Frank Haxhaj has resigned on August 14, 2011. Upon information and belief and based on further investigation, Frank Haxhaj was no

---

[25] Porter County Courts, Case # 61D011002FC1349 , Pleaded guilty of Conversion.
http://www.nwitimes.com/news/local/porter/article_03e1053d-50d8-5c09-a3aa-46501000064c.html

[26] A true and correct copies of some of the many past conversations between Peter Segal and Todd Murray, attached hereto are e-mail conversations between Frank Haxhaj and Todd Murray confirming this; Please see Exhibits "15" (PLA 051) and "16" (PLA 052).

[27] A true and correct copy of the Association's Bylaws and Rule 15 of the Rules, Regulations, and Policies is attached hereto as Exhibit "17" (PLA 053-054).

**PLAINTIFFS' ORIGINAL COMPLAINT**                                        18

longer an agent for the Building Group, Inc; Frank Haxhaj resigned from both the Building Group, Inc. and as a property manager of 5757 North Sheridan Road.

63. During discovery proceedings wherein, both party and non-party depositions were never completed.[28] Both JMLS and CAIR-Chicago decided to take an extremely prejudicing approach with their clients i.e., Plaintiffs Andira Amin and Maged Soliman. On November 17, 2011, Plaintiffs' counsels pressured and wanted Andira Amin and Maged Soliman[29] to consent to a settlement conditions proposed verbally by Defendant Association's counsel Peter Segal; a settlement that was extremely unjust, in violation of the Association's said bylaws, prejudicing Plaintiffs' rights severely, and did not protect their basic civil rights, or bar the Association from future discrimination, or retaliation, or bar the Associations from breaching its fiduciary duty and its said by-laws. Plaintiffs' counsels stated if you won't agree, we will withdraw from your case.[30]

64. On December 1, 2011, Plaintiffs' counsels withdrew from Plaintiffs' case stating to the court due to "Irreconcilable Differences" (Sic) that they are unable to continue representing Andira Amin and Maged Soliman; leaving the Plaintiffs and their children to continuously suffer and face server ongoing discrimination and retaliation by the Association and their counsels, and without no legal representation.

65. On December 1, 2011 wherein Plaintiffs' counsels withdrew, during the same hearing, the Association's counsels took advantage of Andira Amin and her language barrier

---

[28] Depositions were taken by non-license attorneys i.e. jmls law students. Plaintiffs discovered the truth after their counsels withdrew (only 3 board of directors were shortly deposed in a span of a year).

[29] On or about **May of 2011**, Maged Soliman has undergone a full open heart surgery, mechanical surgery and is currently disabled. Since September 29, 2011, a signed agreed order was suppose to be signed by parties' counsels and filed with the court pertaining to Maged soliman's health and his inability to participate at any deposition or trial, however, Plaintiffs' counsels JMLS and Cair-Chicago failed to file the agreed order and never did.

[30] Plaintiffs asked their counsels for a direct settlement meeting with the Associations, or alternatively for a mediation wherein, Plaintiffs' counsels Rabya Khan and Lewis W. Powell III refused to take any of the proposed resolutions without providing any particular reason.

**PLAINTIFFS' ORIGINAL COMPLAINT** 19

wherein, an interpreter from the court was present; the Association's counsels Peter Segal and Kyle Geiger from *Stellato & Schwartz, Ltd* falsely stated in part that unit owner 13B are refusing the Association access to re-inspect and request from the court for another inspection wherein, the court granted the order in front of attorney Lewis W. Powell III, JMLS law student Louis Raymond, and Rabya Khan from Cair-Chicago.

66.     On December 13, 2011, upon a request made by the Plaintiffs to the Illinois Department of Human Rights ("IDHR"), and after ("IDHR") reviewed the facts, finding that Plaintiffs' counsels withdrew without completing the discovery, thus leaving their clients stranded with no legal representation or support, ("IDHR") decided to consider and re-open all the charges against the respondents.[31]

67.     On January 3, 2012, Plaintiffs filed a 3rd charge with ("IDHR") against the Defendants for Defendants' continuous harassment, intimidation, discrimination, and retaliations against the Plaintiffs for filing a housing discrimination complaint.[32]

68.     The Complainant(s) have up to two years to file his or her own private lawsuit in a federal court under the Federal Fair Housing Act ("FHA") after the Department closes out their investigation in the matter. The Complainant(s) also have the right to file a private lawsuit under the FHA in federal court during the Department's investigation.

69.     Plaintiffs allege that they are the only Egyptian – Christian Coptic Orthodox unit owners living at 5757 North Sheridan Road, Chicago, Illinois 60660. Plaintiffs further allege that they are the only family in the entire building who has been singled out, and targeted for a force sale.

---

[31] A true and correct copy of the letter mailed by IDHR is attached hereto as Exhibit "18" (PLA 055), including a copy of the discriminatory and retaliatory charges **(IDHR Case No 2010CH2150) & (IDHR Case No 2011CH0619)** are collectively attached hereto as Exhibits "19" (PLA 056-059) and "20" (PLA 060-064).

[32] A true and correct copy of the 3rd charge (Case No. 2012CH1900 ),  is attached hereto as Exhibit "21" (PLA 065 ).

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                                          20

70.     As a direct consequences of the Defendants' ongoing discriminatory, retaliatory, and harassing actions, creating a hostile environment full of pain and suffering, Plaintiffs and their families continued to suffer severe emotional distress and mental anguish.

71.     All of the actions of the Defendants complained of herein were done willfully, maliciously with disregard of the rights of the Plaintiffs and their family.

### IV. CLAIMS FOR RELIEFS

**Claims Against
5757 N. Sheridan Road Condo Association**

### COUNT 1

Religious Discrimination Under 42 U.S.C. §3604

72.     Plaintiffs restate and re-allege paragraphs 1 – 71 of this Complaint as though the same were fully set forth and pleaded herein.

73.     The Fair Housing Act provided in part, "it shall be unlawful...to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C 3604 (b).

74.     Defendant Association has discriminated against Plaintiffs and Plaintiffs' children in violation of the Fair Housing Act by attempting to evict them because of their national origin and/or religion by falsely accusing them of having leaks in their unit. Defendants further attempted to force them to sell their condominium in an act of retaliation for filing a complaint against the Association with the Illinois Department of Human Rights.

75.     Plaintiffs and their family have sustained direct injuries, including but not limited to, being barred from the full use and enjoyment of Subjected Property, as guaranteed by the Fair Housing Act, and the emotional and mental anguish sustained as a result of Defendant's

**PLAINTIFFS' ORIGINAL COMPLAINT**                                          21

discriminatory actions by intentionally discriminating against the Plaintiffs during Copts religious holidays and calling Saint Abanoub "a safety hazard and a nuisance" and needed to be removed, and by creating a hostile environment where ongoing suffering, harassment, and unfair treatments are occurring.

76.     As a result of Defendant Association intentional discrimination, Plaintiffs and their family have suffered irreparable harms and undue damages.

## COUNT 2

### Violation of 42 U.S.C. §1981

77.     Plaintiffs restate and re-allege paragraphs 1 – 71 of this Complaint as though the same were fully set forth and pleaded herein.

78.     Defendant Association subjected the Plaintiffs and their family to harassment, and discrimination based on their race and ancestry, including but not limited to, by arbitrarily and capriciously imposing fines on Plaintiffs, harassing Plaintiffs' with unannounced inspections and intrusions into their unit, interfering with the enjoyment of their property, allowing Defendant's employees to harass, assault, and batter Plaintiffs and their family members, constructively evicting them, attempting to obtain a court order forcing them to sell their unit, and failing to protect the rights and enforce the obligations of its members equally under the Association Bylaws and its Rules and Regulations.

79.     The aforementioned conduct of the Defendant was willful and malicious acts of unlawful discrimination against Plaintiffs and their family on the basis of their race, and ancestry. Defendant has deprived Plaintiffs the equal right to make and enforce the Defendant Association declaration and bylaws and its rules and regulations, and of full and equal benefit of

all laws and proceedings for the security of their property in violation of 42 U.S.C. § 1981 by enforcing the terms of the agreement selectively and discriminatorily.

    **80.**    As a direct and proximate result of Defendant's actions, Plaintiffs and their family have suffered economic losses, emotional distress, and other consequential damages.

**COUNT 3**

<u>Violation of 42 U.S.C. §1982</u>

    **81.**    Plaintiffs restate and re-allege paragraphs 1 – 71 of this Complaint as though the same were fully set forth and pleaded herein.

    **82.**    Defendant Association subjected the Plaintiffs and their family to harassment, and discrimination based on their race and ancestry, including but not limited to, by arbitrarily and capriciously imposing fines on Plaintiffs, harassing Plaintiffs' with unannounced inspections and intrusions into their unit, interfering with the enjoyment of their property, allowing Defendant's employees to harass, assault, and batter Plaintiffs and their family members, constructively evicting them, attempting to obtain a court order forcing them to sell their unit, and failing to protect the rights and enforce the obligations of its members equally under the Association Bylaws and Its Rules and Regulations.

    **83.**    The aforementioned conduct of the Defendant was willful and malicious acts of unlawful discrimination against Plaintiffs and their family on the basis of their race, and ancestry. Defendant has deprived Plaintiffs the equal right to make and enforce the Defendant Association declaration and bylaws and its rules and regulations, and of full and equal benefit of all laws and proceedings for the security of their property in violation of 42 U.S.C. § 1982 by enforcing the terms of the agreement selectively and discriminatorily.

84.     As a direct and proximate result of Defendant's actions, Plaintiffs have suffered economic losses, emotional distress, and other consequential damages.

## COUNT 4

### Violation of 42 U.S.C. §3617

85.     Plaintiffs restate and re-allege paragraphs 1 – 71 of this Complaint as though the same were fully set forth and pleaded herein.

86.     The Fair Housing Act provides in pertinent part, "it shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. 3617.

87.     Plaintiffs and their family have sustained and continues to sustain direct injuries including ,but not limited to, being barred from the full use and enjoyment of Subjected Property, as guaranteed by the Fair Housing Act, as well as emotional and mental anguish, embarrassment, placing the Plaintiffs and their family in false light, and intimidation sustained as a result of Defendant's discriminatory actions by intentionally discriminating against the Plaintiffs during Copts religious holidays and calling Saint Abanoub "a safety hazard and a nuisance"; and needed to be removed, and by creating a hostile environment where ongoing suffering, harassment, and unfair treatments are occurring.

88.     Defendant is unlawfully retaliating against the Plaintiffs and their family in violation of the Fair Housing Act because Plaintiffs filed a complaint with the Illinois Department of Human Rights. The Defendant subjected the Plaintiffs and their family to harassment, and discrimination based on their race and ancestry, and their religion, Christian

Coptic Orthodox, including but not limited to, by arbitrarily and capriciously imposing fines on Plaintiffs, intrusions into their unit, interfering with the enjoyment of their property, allowing Defendant's employee to harass, assault and batter Plaintiffs and their family members, constructively evicting them through force sale, and failing to protect the rights and enforcing the obligations of its members equally under the Association's bylaws and its rules and regulations.

89.     Defendant Association has discriminated against the Plaintiffs and their family, depriving them of their right to enjoy their condominium.

## COUNT 5

### Unlawful Retaliation Under 775 ILCS 5/3-105.1

90.     Plaintiffs restate and re-allege paragraphs 1 – 71 of this Complaint as though the same were fully set forth and pleaded herein.

91.     The Illinois Human Rights Act provides in pertinent part, "Interference, coercion, or intimidation. It is a civil rights violation to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this Article 3." 775 ILCS 5/3-105.1.

92.     Plaintiffs and their family have sustained and continues to sustain direct injuries including ,but not limited to, being barred from the full use and enjoyment of Subjected Property, as guaranteed by the Illinois Human Rights Act, as well as emotional and mental anguish, embarrassment, placing the Plaintiffs and their family in false light, and intimidation sustained as a result of Defendant's discriminatory actions by intentionally discriminating against the Plaintiffs during Copts religious holidays and calling Saint Abanoub "a safety hazard and a

nuisance"; and needed to be removed, and by creating a hostile environment where ongoing suffering, harassment, and unfair treatments are occurring.

**93.** Defendant is unlawfully retaliating against the Plaintiffs and their family in violation of the Illinois Human Rights Act because Plaintiffs filed a complaint with the Illinois Department of Human Rights. The Defendant subjected the Plaintiffs and their family to harassment, and discrimination based on their race and ancestry, and their religion, Christian Coptic Orthodox, including but not limited to, by arbitrarily and capriciously imposing fines on Plaintiffs, harassing them with unannounced inspections, intrusions into their unit, interfering with the enjoyment of their property, allowing Defendant's employee to harass, assault and batter Plaintiffs and their family members, constructively evicting them, attempting to obtain a court order forcing them to sell their unit; intentionally and falsely portraying the Plaintiffs and their children as a family unable to live in a community environment; and failing to protect the rights and enforcing the obligations of its members equally under the Association's bylaws and its rules and regulations.

**94.** Defendant Association has discriminated against the Plaintiffs and their family, depriving them of their right to enjoy their condominium.

**COUNT 6**

Violation of Illinois Condominium Act §18.4: Powers and Duties of Managers

**95.** Plaintiffs restate and re-allege paragraphs 1 – 71 of this Complaint as though the same were fully set forth and pleaded herein.

**96.** Pursuant to the Condominium Association's Declaration and Bylaws, its Rules, Regulations and Policies and the Illinois Condominium Property act, Condo Association has the obligation and the fiduciary duty to act in the best interest as a Condominium Association as a

whole and provide equal service and fair treatment to all unit owners. Defendant violated the Illinois Condominium Act §18.4: Powers and Duties of Managers by working in its own best interest and the best interest of single unit owner i.e. Todd Murray, this include but not limited to, excessively occurring legal fees and costs on behalf of Todd Murray and levying it against the Plaintiffs' assessment account; representing a single unit owner i.e. Todd Murray in his personal property matter(s); breaching the Association's Bylaws, its Rules, and Regulations, its Declaration, as well as the Illinois Condominium Act by providing unfair and unequal treatments to the Plaintiffs.

97.     Defendants violated the Illinois Condominium Act §18.4: Powers and Duties of Managers by enforcing specific set of conditions that impair Plaintiffs' rights to exercise their basic right, this include but not limited to, failing to protect the rights and enforce the obligations of its members equally under the Association Bylaws and Its Rules and Regulations and the Illinois Condominium Property Act; failure to take firm actions against Association's employees who harass, batter, and assault Plaintiffs and their family; failure to cease discrimination and intimidations during Plaintiffs' religious holidays; failure to act in the best interest as a Condominium Association as a "whole" and provide equal service and fair treatment to all unit owners, by using all unit owners' collective assessments fees and force sale on Plaintiffs' condominium thus acting in the best interest of the Board of directors; and failure to address Plaintiffs' concerns and legit complaints by disregarding them; failure to recognize Plaintiffs' and Plaintiffs' children's health conditions by disregarding them and continuously proceeding with the force sale.

98.     As a direct and proximate result of Defendant's actions, Plaintiffs and their family have suffered emotional distress and mental anguish, embarrassment, humiliation, and intimidation sustained as a result of Defendant's discriminatory and retaliatory actions.

## COUNT 7

### Breach of Fiduciary Duty Pursuant to 765 ILCS 605/18.4

99.     Plaintiffs restate and re-allege paragraphs 1 – 71 of this Complaint as though the same were fully set forth and pleaded herein.

100.    At all times relevant, Defendant, was in a fiduciary relationship with the Plaintiff Andira Amin and Maged Soliman.

101.    Defendant 5757 North Sheridan Road Condo Association is responsible, as principal, for the acts of its agents, employees and servant members. A condominium board breaches its fiduciary duties under the ICPA when its policies are not applied uniformly to all residents.

102.    Under Condominium Property Act, Defendant had a duty to:

    a)      Perform its duties as an association in a reasonable manner and with due care for the welfare of 5757 North Sheridan Road Condominium's members (including Plaintiffs Andira Amin and Maged Soliman) and their property.

    b)      Perform its duties as an association with due regard for the provisions and duties set forth in the Condominium Property Act and the Declaration and Bylaws.

    c)    Perform its duties as an Association with due regard for the provisions and duties set forth in the Fair Housing Act and its regulations.

    d)    Otherwise act in its fiduciary relationship with Plaintiffs, Andira Amin and Maged Soliman.

**103.**    Defendant, 5757 North Sheridan Road Condominium Association breached its fiduciary duty to Plaintiffs, Andira Amin and Maged Soliman by failing in its duties owed to them, by acting in a willful and wanton manner, and by engaging in bad faith and unfair dealing.

**104.**    In addition, Defendant 5757 North Sheridan Road Condominium Association breached its fiduciary duty to Andira Amin and Maged Soliman when it used its particular and superior position to intimidate, and interfere with Plaintiffs' housing rights.

**105.**    As a direct and proximate cause of Defendant's breach of fiduciary duty, Plaintiffs was injured and sustained emotional distress, embarrassment, humiliation, and other injury and continues to suffer emotional distress, mental anguish, and other consequential damages.

**Claims Against**
**Defendant Ronald Mendelblat**

**COUNT 8**

Religious Discrimination Under 42 U.S.C. §3604

**106.**    Plaintiffs restate and re-allege paragraphs 1 – 71 of this Complaint as though the same were fully set forth and pleaded herein.

**107.**    Defendant Ronald Mendelblat acting on behalf of the Association has discriminated against Plaintiffs and Plaintiffs' children in violation of the Fair Housing Act by attempting to evict them because of their national religion by falsely accusing them of interfering with the Association's daily day business based on his filed affidavit. Defendant further

**PLAINTIFFS' ORIGINAL COMPLAINT**                         29

attempted to force Plaintiffs to sell their condominium in an act of retaliation for filing a complaint against the Association with the Illinois Department of Human Rights.

**108.** Plaintiffs and their family have sustained direct injuries, including but not limited to, being barred from the full use and enjoyment of Subjected Property, as guaranteed by the Fair Housing Act, and the emotional and mental anguish sustained as a result of Defendant, Ronald Mendelblat's discriminatory actions by intentionally, and acting on behalf of the Association, discriminated against the Plaintiffs during their religious holidays and calling Saint Abanoub "a safety hazard and a nuisance".

**109.** As a result of Defendant intentional discrimination, Plaintiffs and their family have suffered irreparable harms and undue damages.

### COUNT 9

<u>Violation of 42 U.S.C. §1982</u>

**110.** Plaintiffs restate and re-allege paragraphs 1 – 71 of this Complaint as though the same were fully set forth and pleaded herein.

**111.** Defendant, Ronald Mendelblat subjected the Plaintiffs and their family to harassment, and discrimination based on their race and ancestry, including but not limited to, by arbitrarily and capriciously imposing fines on Plaintiffs, harassing Plaintiffs' with unannounced inspections and intrusions into their unit, interfering with the enjoyment of their property, allowing Defendant's employees to harass, assault, and batter Plaintiffs and their family members, constructively evicting them by attempting to obtain a court order forcing them to sell their unit, and failing to protect the rights and enforce the obligations of its members equally under the Association's bylaws and its rules and regulations.

112.    The aforementioned conduct of the Defendant was willful and malicious acts of unlawful discrimination against Plaintiffs and their family on the basis of their race, and ancestry. Defendant, Ronald Mendelblat acting on behalf of the Association has deprived Plaintiffs the equal right to make and enforce the Association's Declaration and Bylaws and its Rules and Regulations, and of full and equal benefit of all laws and proceedings for the security of their property in violation of 42 U.S.C. § 1982 by enforcing the terms of the agreement selectively and discriminatorily.

113.    As a direct and proximate result of Defendant's actions, Plaintiffs have suffered economic losses, emotional distress, and other consequential damages.

## COUNT 10

### Violation of 42 U.S.C. §3617

114.    Plaintiffs restate and re-allege paragraphs 1 – 71 of this Complaint as though the same were fully set forth and pleaded herein.

115.    Plaintiffs and their family have sustained and continues to sustain direct injuries including ,but not limited, being barred from the full use and enjoyment of Subjected Property, as guaranteed by the Fair Housing Act, as well as emotional and mental anguish, embarrassment, placing the Plaintiffs and their family in false light, and intimidation sustained as a result of Defendant's discriminatory actions by intentionally discriminating against the Plaintiffs during their religious holidays and calling Saint Abanoub "a safety hazard and a nuisance", and by creating a hostile environment where ongoing suffering, harassment, and unfair treatments are occurring.

116.    Defendant, Ronald Mendelblat is unlawfully retaliating against the Plaintiffs and their family in violation of the Fair Housing Act because Plaintiffs filed a complaint with the

Illinois Department of Human Rights. The Defendant subjected the Plaintiffs and their family to harassment, and discrimination based on their race and ancestry, including but not limited to, by arbitrarily and capriciously imposing fines on the Plaintiffs, harassing them with unannounced inspections, intrusions into their unit, interfering with the enjoyment of their property, allowing Defendant's employee to harass, assault and batter Plaintiffs and their family members, constructively evicting them by attempting to obtain a court order forcing them to sell their unit, and failing to protect the rights and enforcing the obligations of its members equally under the Association's bylaws and its rules and regulations.

117.    Defendant has discriminated against the Plaintiffs and their family, depriving them of their right to enjoy their condominium.

### COUNT 11

#### Unlawful Retaliation Under 775 ILCS 5/3-105.1

118.    Plaintiffs restate and re-allege paragraphs 1 – 71 of this Complaint as though the same were fully set forth and pleaded herein.

119.    Plaintiffs and their family have sustained and continues to sustain direct injuries including ,but not limited to, being barred from the full use and enjoyment of Subjected Property, as guaranteed by the Illinois Human Rights Act, as well as emotional and mental anguish, embarrassment, placing the Plaintiffs and their family in false light, and intimidation sustained as a result of Defendant's discriminatory actions by intentionally discriminating against the Plaintiffs during their religious holidays and calling Saint Abanoub "a safety hazard and a nuisance", and by creating a hostile environment where ongoing suffering, harassment, and unfair treatments are occurring.

120.    Defendant, Ronald Mendelblat is unlawfully retaliating against the Plaintiffs and their family in violation of the Illinois Human Rights Act because Plaintiffs filed a complaint with the Illinois Department of Human Rights. The Defendant subjected the Plaintiffs and their family to harassment, and discrimination based on their race and ancestry, including but not limited to, by arbitrarily and capriciously imposing fines on Plaintiffs, harassing them with unannounced inspections, intrusions into their unit, interfering with the enjoyment of their property, allowing Defendant's employee to harass, assault and batter Plaintiffs and their family members, constructively evicting them by attempting to obtain a court order forcing them to sell their unit, and failing to protect the rights and enforcing the obligations of its members equally under the Association's bylaws and its rules and regulations.

121.    Defendant has discriminated against the Plaintiffs and their family, depriving them of their right to enjoy their condominium.

## V. **PRAYER**

WHEREFOR, for these reasons, and after taking into consideration the nature of the wrongs, the character and conduct involved, the degree of culpability of the wrongdoer, and the situation and sensibilities of the parties concerned and the extent to which these conducts offends the public sense of justice, Plaintiffs respectfully prays for the following:

1.    Bar the Association, through a Temporary Restraining Order, a Preliminary Injunction relief, and a Permanent Injunction relief; or a protective order; or alternatively in such form as the Court may deem appropriate providing that the Association, its representatives, and those in active concern with them, from constantly interfering and retaliating against Plaintiffs and their children by force sale on their condominium pending final findings from IDHR, HUD and this honorable Court.

**PLAINTIFFS' ORIGINAL COMPLAINT**                                    33

2.    Plaintiffs respectfully request for a direct settlement meeting with the Association; mediation; or alternatively any other form as the Court may deem appropriate in order to reach a fair resolution guided by the laws and the presented evidences, to avert extending this litigation and occurring fees and costs.

3.    For a declaration that the Defendants have violated the Fair Housing Act, and the Illinois Human Rights Act.

4.    Judgment against Defendants for punitive and compensatory damages in an amount within the jurisdictional limits of the Court.

5.    After a trial on the merits, Plaintiffs seek judgment against the Defendants for damages suffered as the Court may deem appropriate for the continuous actual and emotional damages which were inflicted upon the Plaintiffs and their children by the Defendants. Plaintiffs leaves any further reliefs for the honorable Court to decide in this suit.

Respectfully submitted,

By: _____
Mark Bochra
5757 N. Sheridan Road, Apt 13B
Chicago, Illinois 60660
*Plaintiff, Pro Se*

By: _____
Andira Amin
5757 N. Sheridan Road, Apt 13B
Chicago, Illinois 60660
*Plaintiff, Pro Se*

By: _____
Maged Soliman
5757 N. Sheridan Road, Apt 13B
Chicago, Illinois 60660
*Plaintiff, Pro Se*

**PLAINTIFFS' ORIGINAL COMPLAINT**

## CERTIFICATE OF SERVICE

I, Mark Bochra, hereby certify that on January 2o, 2012, I have filed the foregoing documents

with the Clerk of Court for the U. S. District Court, Northern District of Illinois by hand

delivering it.

MARK Bochra
Mark Bochra
*Plaintiff, Pro Se*

## INDEX TO APPENDIX

| Exhibit | Description | Bates-label |
|---------|-------------|-------------|
| 1 | A letters between attorney Bruce A. Dickman and Frank Haxhaj. | PLA 001 |
| 2 | A copy of the letter signed by Frank Haxhaj regarding Saint Abanoub. | PLA 002 |
| 3 | A copy of Saint Abanoub picture tapped on unit 13B doorpost. | PLA 003 |
| 4 | A copy of October 7, 2010 Discrimination Complaint filed with IDHR. | PLA 004 -007 |
| 5 | A copy of the Association's lawsuit against unit 13B. | PLA 008 - 016 |
| 6 | A copy of the Egyptian Tomb placed in unit 12B. | PLA 017 |
| 7 | A copy of the e-mail sent to David D'Hansel with regards to the Association's plan to retaliate. | PLA 018 - 019 |
| 8 | A copy of the e-mail send from Board of directors Time Sergent. | PLA 020 |
| 9 | A copy of the e-mail sent from Frank Haxhaj to Todd Murray. | PLA 021 |
| 10 | A copy of the Association's First Amended Complaint based on forced sale. | PLA 022 - 039 |

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                35

| 11 | Collectively, copies of the violated sections of the Associations By-laws. | PLA 040 - 044 |
|---|---|---|
| 12 | A letter from investigator David D'Hansel to Christina Abraham. | PLA 045 |
| 13 | A letter from Plaintiffs' insurance to the Association. | PLA 046 |
| 14 | A Copy of the Association's counsel, Peter Segal letter to Plaintiffs' counsel JMLS and Cair-Chicago. | PLA 047 - 050 |
| 15 | Copies of some of the countless conversations between Frank Haxhaj and Todd Murray pertaining to Peter Segal. | PLA 051 |
| 16 | Copies of some of the countless conversations between Frank Haxhaj and Todd Murray pertaining to Peter Segal. | PLA 052 |
| 17 | A copy of the Association's Bylaws and Rule 15 of the Rules, Regulations, and Policies. | PLA 053 - 054 |
| 18 | A copy of the letter mailed from IDHR to both the Complainants and the Respondents regarding re-opening the discrimination charges. | PLA 055 |
| 19 | A copy of October 7, 2010 Discrimination Complaint filed with IDHR; 1st charge. | PLA 056 - 059 |
| 20 | A Copy of October 25, 2010 Discrimination Complaint filed with IDHR; 2nd charge. | PLA 060 - 064 |
| 21 | A Copy of January 3, 2012 Discrimination Complaint filed with IDHR; 3rd charge. | PLA 065 |