# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 446 | **DATE** | 6/6/2012 |
| **CASE TITLE** | Amin, et al. vs. 5757 N. Sheridan Rd. Condo Assn., et al. | | |

**DOCKET ENTRY TEXT**

Plaintiffs' motion for reconsideration [#58] is denied. Plaintiffs' request for certification of an interlocutory appeal is denied. See statement below.

■[ For further details see text below.]  Docketing to mail notices.

## STATEMENT

On May 15, 2012, the court granted in part and denied in part plaintiffs' motion to reconsider its order granting defendant 5757 N. Sheridan Road Condominium Association's (the "Association") motion to dismiss. The court ordered that Andira Amin and Maged Soliman be reinstated as plaintiffs and ordered the proceedings stayed as to all defendants, including Mark Bochra, pending the resolution of a concurrent state court proceeding. Also on May 15, the court denied plaintiffs' motion to file a second amended complaint on the grounds that the case had been stayed at the time their motion was filed. Before the court is plaintiffs' motion for reconsideration of the court's May 15 order. Dkt. #58. In the alternative, plaintiffs request that the court certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Although plaintiffs' motion is styled as a motion for reconsideration of the order denying leave to file a second amended complaint, its focus is the merits of the decision to stay this case. On May 22, 2012, the court gave defendants notice that it intended to construe the motion as requesting reconsideration of the order granting a stay and directed defendants to file a response that addresses whether plaintiff Bochra's suit is "parallel" to the state court proceeding, given that he is not a party to that suit. This is a threshold issue that was not extensively briefed during the prior rounds of motions. Plaintiffs' motion for reconsideration, however, devotes approximately two pages to argument regarding Bochra's individual claims and further consideration of the issue is warranted.

I. Whether Bochra's Suit is Parallel to the State Court Proceeding[1]

Two key factors support the conclusion that Bochra's suit is parallel to the state court proceeding, even though he is not a party to that case. First, Bochra's claims in this proceeding are substantially the same as the counterclaims filed by his parents in the state court proceeding. As the court explained in its May 15 opinion and order, the facts alleged in plaintiffs' first amended complaint are substantially the same as the facts alleged in support of Amin and Soliman's state court counterclaim. The first five counts in the first amended complaint assert the same violations of federal and state law that are asserted in the state court

**STATEMENT**

counterclaims. The three claims that have not been asserted in state court are (1) breach of fiduciary duty in violation of the Illinois Condominium Act, 765 Ill. Comp. Stat. 605/18.4 (the "Condominium Act");[2] (2) violation of the religious practices provision in the Condominium Act, 765 Ill. Comp. Stat. 605/18.5(h); and (3) violation of the religious practices provision in the Chicago Fair Housing Ordinance, Municipal Code § 5-8-030(H) (the "Housing Ordinance").

The breach of fiduciary duty claim is premised on the theory that the Association failed to apply its rules in an evenhanded manner. *See Bloch* v. *Frischholz*, Nos. 05 C 5377, 05 C 5379, 2011 WL 2633791, at *3 (N.D. Ill. Jul. 5, 2011) (condominium board breaches its fiduciary duties under the Condominium Act when its policies are not applied uniformly to all residents). The additional religious discrimination claims are based on the theory that the Association did not reasonably accommodate plaintiffs' religious practice of hanging a picture of Saint Abanoub on their door. *See* 765 Ill. Comp. Stat. 605/18.4(h) ("No rule or regulation shall prohibit any reasonable accommodation for religious practices, including the attachment of religiously mandated objects to the front-door area of a condominium unit."); Chi. Municipal Code § 8-8-030(H) (it shall be an unfair housing practice to prohibit a condominium unit owner from posting a religious symbol on the door of a condominium unit "provided that imposing reasonable rules necessary to avoid substantial damage to property or an undue hardship to other owner unit owners" shall not be a violation of the Housing Ordinance).

In support of these claims, the first amended complaint alleges facts that were also alleged in Amin and Soliman's state court counterclaims. (*See* Amend. Compl. ¶¶ 108, 114–15 (alleging that the Association breached its fiduciary duty because it took punitive actions at the behest of Todd Murray (who accused plaintiffs of having water leaks), failed to discipline employees who harassed plaintiffs, discriminated against plaintiffs during religious holidays, initiated proceedings for a forced sale of plaintiffs' condominium unit, failed to address plaintiffs' complaints, engaged with plaintiffs "in bad faith," and interfered with plaintiffs' housing rights), 119 & 123 (alleging that the Association failed to accommodate plaintiffs' religion when it demanded that they remove a picture of Saint Abanoub from their door because it was allegedly a nuisance and a safety hazard).) Whether the Association applied its rules evenhandedly and whether its removal of the picture of Saint Abanoub was reasonable are issues that are also relevant to determining the merits of Amin and Soliman's federal civil rights claims. *See Bloch* v. *Frischholz*, 587 F.3d 771, 785–87 (7th Cir. 2009) (en banc) (discussing the "combination" of "facts and inferences" that could lead a trier of fact to conclude that a condominium association intentionally discriminated against plaintiffs on the basis of their religion).

The second factor that suggests the cases are parallel is that both cases would be resolved by examining the same evidence. *See, e.g.*, *Huon* v. *Johnson & Bell, Ltd.*, 657 F.3d 641, 647 (7th Cir. 2011); *Tryer* v. *City of S. Beloit, Ill.*, 456 F.3d 744, 753–53 (7th Cir. 2006). To the extent that the first amended complaint includes allegations that are not included in the state court counterclaim, the allegations either relate to conduct that relates to Bochra as well as his parents, *see* Amend. Compl. ¶¶ 46–48, 59–60, elaborate existing claims, *see id.* ¶¶ 63–64, or appears to be based on facts that came to light during the course of the state court litigation. *See id.* ¶¶ 44–45, 65–67, 74. The allegations do not provide a predicate for new civil rights claims and the evidence that supports the allegations is plainly relevant to and can be submitted during the state court case. Furthermore, Bochra was deposed during the state court proceeding and will testify at trial, thereby giving him a full opportunity to air the grievances that provide the basis for the claims asserted in his federal suit. *Compare with Huon*, 657 F.3d at 647 (plaintiff's federal civil rights claims would not be supported by the same evidence as his state law defamation and emotional distress claims).

Bochra argues that the proceedings are not parallel because he has an interest in protecting his rights under the Constitution and the relevant civil rights statutes that is independent of the interests asserted by his parents in state court. This court, in directing defendants to respond to Bochra's motion, noted its concern about the issue and cited *Smith* v. *Schermerhorn*, No. 85 C 7372, 1986 WL 3014, at *5–6 (N.D. Ill. Feb. 28, 1986). *Smith* rejected the argument that *res judicata* barred a daughter from bringing a housing

| STATEMENT |
|---|

discrimination claim under 42 U.S.C. § 1982 because her mother had previously litigated a housing discrimination suit under the Evanston Fair Housing Ordinance. The court noted that "[n]ot a single case has held that plaintiffs who assert rights guaranteed by the Constitution or civil rights granted by federal statutes are barred by the assertion in an earlier action of similar rights by others." *Id.* at *5 (quoting *Local 1006, A.F.S.C.M.E., AFL-CIO* v. *Wurf*, 558 F. Supp. 230, 236 (N.D. Ill. 1982)). The court concluded that the daughter "was not present at the [Evanston Human Rights] Commission proceedings to assert her rights and neither her mother nor her sister and brother-in-law could do that for her so as to bind her to that judgment." *Id.* at *6. Defendants argue that *Smith* is distinguishable on the grounds that Bochra will present evidence regarding his claims at the state court trial and that Amin and Soliman's state court counterclaim seeks a broad declaration that the Association's conduct, which includes conduct directed at Bochra, violated the Fair Housing Act and the Illinois Human Rights Act. They also urge the court to follow *Interstate Material Corporation* v. *City of Chicago*, 847 F.2d 1285 (7th Cir. 1988), which affirmed a stay based on *Colorado River* abstention even though the federal action asserted claims on behalf of two classes of plaintiffs who were not parties to the state proceeding. The Seventh Circuit based its holding in part on the conclusion that "although the members of the possible class in the federal action are technically not represented in the state action, the relief requested will benefit them." *Id.* at 1288.

  Defendants' reasoning is persuasive. "Parties with 'nearly identical' interests are considered 'substantially the same' for *Colorado River* purposes." *Clark* v. *Lacy*, 376 F.3d 682, 686 (7th Cir. 2004). Even though Bochra has an independent interest in fully litigating his housing discrimination claims, Bochra has not explained how his interests in litigating his housing discrimination claims might diverge from the interests asserted by his parents in the state court case. Indeed, the court can discern no meaningful difference between the three plaintiffs' claims.

  Moreover, under Illinois principles of *res judicata*, "[a] nonparty may be bound pursuant to privity if his interests are so closely aligned to those of a party that the party is the 'virtual representative' of the nonparty." *City of Chicago* v. *St. John's United Church of Christ*, 935 N.E.2d 1158, 1168, 343 Ill. Dec. 930, 404 Ill. App. 3d 505 (2010) (quoting *City of Rockford* v. *Unit Six of the Policemen's Benevolent & Protective Ass'n*, 840 N.E.2d 1283, 1290, 298 Ill. Dec. 848, 362 Ill. App. 3d 556 (2005)).[3] Illinois courts discuss privity in terms similar to those used by federal courts to describe "similar parties" for *Colorado River* purposes. In general, "[p]rivity is said to exist between parties who adequately represent the same legal interests." *People ex rel. Burris* v. *Progressive Land Devs., Inc.*, 602 N.E.2d 820, 825, 176 Ill. Dec. 874, 151 Ill. 2d 285 (1992) (quotations and citation omitted). "[D]etermining privity requires a careful examination into the circumstances of each case." *Apollo Real Estate Inv. Fund, IV, L.P.* v. *Gelber*, 935 N.E.2d 963, 973, 343 Ill. Dec. 735, 403 Ill. App. 3d 179 (2010).

  Here, unlike the plaintiffs in *Smith* and the authority relied on therein, Bochra has participated extensively in the prior proceeding. *Cf. Smith*, 1986 WL 3014, at *6; *Local 1006*, 558 F. Supp. at 235 (noting that plaintiffs in the federal case did not participate in the other cases). Plaintiffs' motion to compel mediation contains a lengthy recitation of facts relating to Bochra's participation in "every meeting" held with his mother and their former *pro bono* counsel as well as his participation in a settlement conference wherein Bochra "discovered" prior counsel's "plan to harm his family" by forcing his parents to agree to a "brutal and unfair settlement." It also appears that Bochra communicated with former counsel regarding their strategy for the case. *See, e.g.*, Dkt. #37-6. Furthermore, as defendants note, Bochra will provide testimony at the upcoming trial.

  Finally, given the alignment of interests and the facts of this case, Amin and Soliman have every incentive to litigate their claims in state court. The record suggests that Bochra is actively participating in, if not controlling, the state court litigation.[4] While the test for *res judicata* does not determine the outcome of the court's *Colorado River* abstention analysis, *see Huon*, 657 F.3d at 646, that the state court judgment would likely bind Bochra in federal court is another factor indicating that his suit is parallel with the state

| STATEMENT |
|---|

court case. *See Lumen Constr., Inc.* v. *Brant Constr. Co.*, 780 F.2d 691, 695–96 (7th Cir. 1985).

In sum, the unique circumstances of this case indicate that Bochra's suit is, as the court originally determined, parallel to the state court proceedings. The court is mindful that it must exercise jurisdiction if "there is any substantial doubt that the parallel litigation will be an adequate vehicle for the complete . . . resolution of the issues between the parties." *AAR Int'l, Inc.* v. *Nimelias Enters. S.A.*, 250 F.3d 510, 520 (7th Cir. 2001) (quoting *Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 28, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)). No "substantial doubt" is present here, however, and the court adheres to its initial conclusion that the Bochra's suit is parallel to the state court proceeding.

II.    Whether Exceptional Circumstances Justify Abstention

Bochra criticizes the court's failure to explicitly consider several factors that it determined were neutral, noting that in general "absent or neutral factors weigh in favor of exercising jurisdiction." *Huon*, 657 F.3d at 648. Factors that are neutral, and therefore weigh in favor of jurisdiction, include: (1) the fact that the state court has not assumed jurisdiction over the property, (2) the fact that the federal forum is not inconvenient to the parties, and (3) the fact that the source of law is federal, at least with respect to some claims. These factors are strongly outweighed by the factors that favor abstention that are discussed in the court's opinion and order. Most significantly, a stay will eliminate duplicative and piecemeal litigation. "Without staying the federal proceeding, the two actions would proceed simultaneously – duplicating the amount of judicial resources required to reach a resolution. . . . [T]he two courts would oversee similar pre-trial motions and discovery matters and two different triers of fact would be asked to consider the same issues, evidence and witnesses. . . . [T]his sort of redundancy counsels in favor of a stay." *Clark*, 376 F.3d at 687. Finally, although the federal claims are not plainly "vexatious or contrived," plaintiffs' federal case appears to be an attempt to circumvent the possible adverse outcome of the state court proceeding. Their original complaint was filed approximately two months after counsel's withdrawal in the state court proceeding. Their amended complaint, motion to compel mediation, and reply in support of their most recent motion to reconsider include lengthy recitations of the injustices allegedly inflicted on them during the state court proceeding. If anything, plaintiffs' motivations in filing a federal suit weigh in favor of a stay. For all of these reasons, exceptional circumstances exist that justify the court's decision to relinquish jurisdiction. Plaintiffs' motion to reconsider [#58] is denied.

III.    Whether Certification of an Interlocutory Appeal is Warranted

Plaintiffs request that the court certify a petition for interlocutory appeal under 28 U.S.C. § 1292(b). Section 1292(b) is inapplicable. An order granting a stay pending resolution of a state suit is considered a "final" order appealable under 28 U.S.C. § 1291. *See Quackenbush* v. *Allstate Ins. Co.*, 517 U.S. 706, 712–13, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996); *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 10 n.11; *Sverdrup Corp.* v. *Edwardsville Cmty. Unit Sch. Dist. No. 7*, 125 F.3d 546, 549 n.2 (7th Cir. 1997). Plaintiffs may appeal this court's order granting a stay without receiving certification for an immediate appeal under section 1292(b).

---

1. The court assumes familiarity with the facts of this case as well as the general legal principles governing motions to reconsider and *Colorado River* abstention, set forth in the May 15 order. *See* Dkt. #56.

2. Counts 6 and 7 of plaintiffs' first amended complaint both assert the same claim, which is breach of fiduciary duty under the Condominium Act. The court considers these counts together.

3. The Supreme Court rejected the "virtual representation" exception to the federal common law rule against nonparty claim preclusion in *Taylor* v. *Sturgell*, 553 U.S. 880, 128 S. Ct. 2161, 171 L. Ed. 2d 155

(2008). Illinois courts, however, have continued to recognize the doctrine of virtual representation even after *Taylor*. *See St. John's United Church of Christ*, 935 N.E.2d at 1168. The court looks to Illinois law to determine the possible preclusive effect of a judgment in the ongoing state court case. *See, e.g.*, *LaSalle Nat'l Bank of Chicago* v. *Cnty. of DuPage*, 856 F.2d 925, 930 (1988) ("[A] state judgment must be given the same *res judicata* effect in federal court that it would be given in the court of the rendering state." (citation and quotation omitted)).

4. This factor alone might bind Bochra to any determination of the issues in the state court proceeding. *See Restatement (Second) of Judgments* § 39 (1982) ("A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party.").